KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Erica R. Aisner, Esq.
EAisner@kacllp.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

|  |  |
|---|---|
|  | Chapter 11 |
| GATEWAY KENSINGTON LLC, | Case No. 21-22274 (RDD) |

Debtor.
-----------------------------------------------------------------X

**GATEWAY KENSINGTON LLC'S**
**FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

Gateway Kensington LLC, the above captioned debtor and debtor-in-possession (the "Debtor"), hereby proposes the following First Amended Chapter 11 Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

**ARTICLE I**
**DEFINITIONS**

For the purposes of this Plan, and the Disclosure Statement simultaneously filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1.1 "*Administrative Claim*" shall mean, except as otherwise set forth in this Plan, all or that portion of a Claim for any cost or expense of administration in connection with the Chapter 11 case, including, without limitation, any actual, necessary costs and expenses of

preserving the Debtor's estate, and all fees and charges assessed against the Debtor's estate pursuant to 28 U.S.C. § 1930. The term Administrative Claim does not include Fee Claims, which are treated separately in this Plan.

1.2     *"Affiliate"* shall have the meaning ascribed to it in section 101(2) of the Bankruptcy Code which defines it, in part, as any entity of which 20 percent or more of the ownership is owned or controlled or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding equity of the Debtor or an entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement.

1.3     "*Allowed*" shall mean with respect to any Claim or Interest that portion of such Claim or Interest (i) which has been allowed by a Final Order; (ii) which is allowed under the terms of this Plan; or (iii) (a) which has been scheduled by the Debtor as not disputed, not contingent and not unliquidated, or (b) for which a proof of claim was timely filed and otherwise properly filed on or before November 24, 2021 with the Bankruptcy Court and, with respect to Claims described in (iii) as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, the Plan in Article IX hereof, the Bankruptcy Rules or an order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim or any portion thereof. Except as otherwise specifically set forth in this Plan, each Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the provision of the Bankruptcy Code and applicable law.

1.4    *"Allowed Administrative Claim"* shall mean all or that portion of any Administrative Claim which has become allowed by a Final Order or was incurred by the Debtor in the ordinary course of business during the Chapter 11 case and is due and owing under the terms and conditions of any agreement and applicable law.

1.5    *"Avoidance Actions"* shall mean any cause of action assertable under sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or non-bankruptcy law.

1.6    "*Bankruptcy Code*" shall mean title 11 of the United States Code, 11 U.S.C. §§101, et seq., as in effect on the Petition Date.

1.7    "*Bankruptcy Court*" shall mean the United States Bankruptcy Court for the Southern District of New York, White Plains Division.

1.8    *"Bankruptcy Rules"* shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 case, including the Local Rules of the Bankruptcy Court.

1.9    *"Business Day"* shall mean any day on which commercial banks are open for business, other than, a Saturday, Sunday or legal holiday in the State of New York.

1.10    *"Cash"* shall mean the legal tender of the United States of America.

1.11    *"Causes of Action"* shall mean any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed

or undisputed, secured or unsecured, assertable directly or derivatively, belonging to the Debtor, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.12 "*Chapter 11 case*" shall mean the above-captioned case commenced by the filing of a voluntary petition by the Debtor seeking relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court on the Petition Date.

1.13 "*Claim*" shall mean a claim as defined in section 101(5) of the Bankruptcy Code, including, without limitation, claims arising under section 502 of the Bankruptcy Code.

1.14 "*Class*" shall mean a class of holders of Claims or Interests described in Article III of this Plan.

1.15 "*Confirmation Date*" shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.16 "*Confirmation Order*" shall mean the order of the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code confirming the Plan.

1.17 "*Convenience Claim*" shall mean a Claim which is less than $150,000 in amount.

1.18 "*Debtor*" shall mean Gateway Kensington LLC.

1.19    "*Deficiency Estimate*" shall mean approximately $7.35 million dollars which is the additional amount of money the Debtor estimates will be needed for the Plan Distribution Fund, in addition to the Net Sale Proceeds and ordinary income not otherwise required for the Operating Reserve, in order to fund this Plan.

1.20    "*Disbursing Agent*" shall mean Kirby, Aisner & Curley LLP, who shall act in such capacity in order to effectuate the payment of distributions under the Plan.

1.21    "*Disclosure Statement*" shall mean the Disclosure Statement filed simultaneously with the Plan of Reorganization by the Debtor in the Chapter 11 case.

1.22    "*Disputed Claim*" shall mean any Claim (i) which is scheduled by the Debtor as disputed, contingent or unliquidated, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance has been or is interposed within the period of time set forth in Article IX hereof or by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or an order of the Bankruptcy Court extending such time for the filing of such objections, and as to which, such objection has not been determined by a Final Order of the Bankruptcy Court or withdrawn. Such Claim, or a portion thereof, shall not be deemed an Allowed Claim until and unless and to the extent it is resolved as an Allowed Claim by a Bankruptcy Court order.

1.23    "*Effective Date*" shall mean the first Business Day that is one (1) Business Day after the date upon which the Confirmation Order becomes a Final Order.

1.24    "*Estate*" shall mean the estate of the Debtor created by the Chapter 11 case pursuant to Bankruptcy Code section 541.

1.25    "*Estate Claims*" shall have the meaning ascribed to it in section 8.1 of this Plan.

1.26   *"Exculpated Claim"* any claim related to any act or omission in connection with, relating to, or arising out of the Debtor's in or out of court restructuring efforts, the Chapter 11 case, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the filing of the Chapter 11 case, the pursuit of confirmation of this Plan, the administration and implementation of this Plan; *provided*, *however*, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud to the extent imposed by applicable non-bankruptcy law.  For the avoidance of doubt, no cause of action, obligation or liability expressly set forth in or preserved by this Plan constitutes an Exculpated Claim.

1.27   *"Exculpated Party"* means, with respect to post Petition Date conduct only, the Debtor and its current and former officers, directors, members, managers, employees, attorneys and advisors, each in their respective capacities as such.

1.28   *"Fareri Contribution"* shall mean the amount of money paid by John Fareri to the Debtor in order to partially fund the Plan.

1.29   *"Fee Claim"* shall mean a Claim by any Professional for compensation for legal and other services and reimbursement of expenses allowed or awarded under Bankruptcy Code sections 327, 328, 330(a), 331, 503(b) and/or 1103.

1.30   *"Final Order"* shall mean an order or judgment of the Bankruptcy Court entered by the clerk of the Bankruptcy Court on the docket of the Chapter 11 case which has not been reversed, vacated or stayed and as to which (a) the time to appeal or seek review or rehearing has

expired, and a notice of appeal or request for review or rehearing is not pending, or (b) any appeal that has been taken has been finally determined or dismissed on grounds that affirm the order or judgment, it being further provided that if such appeal or request for a rehearing is pending, that if such order is not stayed pending appeal or rehearing pursuant to Fed. R. Civ. P. 62 as incorporated by Bankruptcy Rule 7062, the order shall be deemed to be a Final Order. The possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed related to such order or judgment shall not cause such order or judgment to not be a Final Order.

1.31    *"Guarantor"* shall mean John Fareri, who has personally guaranteed the Debtor's payment obligations under the Plan.

1.32    "*Impaired*" shall mean a Claim or class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.33    "*Interest*" shall mean the holders of the membership interests in the Debtor, within the meaning of Bankruptcy Code sections 101(16) and (17).

1.34    "*Insiders"* shall mean, a director, officer, or person in control of the Debtor or a relative thereof, an affiliate, or insider of an affiliate as if such affiliate were the debtor or managing agent of the Debtor, within the meaning of section 101(31) of the Bankruptcy Code.

1.35    *"Naples Property"* shall mean the commercial condominium located at 602 5th Avenue South, Unit 101, Naples, Florida 34102.

1.36    "*Net Sale Proceeds*" shall mean the remainder of the purchase price paid by the buyer of each of the Remaining Units, after actual and necessary closing adjustments and other closing costs or Claims permitted to be paid at the closing.

1.37    *"Operating Reserve"* shall mean such amount of money, maintained by the Debtor, estimated by the Debtor in its business judgment, necessary to cover the Debtor's projected operating expenses for six (6) months at any given time.

1.38    "*Petition Date*" shall mean May 14, 2021.

1.39    "*Person*" shall mean means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtor.

1.40    "*Plan*" shall mean this Plan of Reorganization and any amendments hereto or modifications hereof made in accordance with the provisions of the Bankruptcy Code.

1.41    *"Plan Distribution Fund"* shall mean the funds held by the Disbursing Agent which are derived from excess Cash on hand from the Debtor, net proceeds of sale from the Remaining Units (after any replenishment needed for the Operating Reserve) and the Fareri Contribution.

1.42    "*Priority Claim*" shall mean a Claim other than an Administrative Claim that is entitled to priority under section 507 of the Bankruptcy Code.

1.43    "*Priority Tax Claim*" shall mean any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.44    "*Pro Rata*" shall mean the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of Allowed Claims in such Class.

1.45    "*Professionals*" shall mean professional persons retained under section 327 or 1103 of the Bankruptcy Code pursuant to a Final Order of the Bankruptcy Court and shall specifically include Kirby Aisner & Curley LLP.

1.46    "*Property*" shall mean the property located at 15 Kensington Road, Bronxville, New York 10708, known as Villas BXV Condominium.

1.47    "*Remaining Units*" shall mean the remaining unsold units of the Property, specifically unit numbers 211, 312, PH3, and PH5, but not including the Naples Property.

1.48    "*Reorganized Debtor*" shall mean the Debtor, on or after the Effective Date.

1.49    "*Schedules*" shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments thereto.

1.50    "*Unsecured Claim*" shall mean any Claim which is not an Administrative Claim, secured Claim, Priority Claim, or Interest that arose prior to the Petition Date and includes, without limitation, Claims based upon pre-petition trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the Chapter 11 case.

## ARTICLE II
## DESIGNATION AND TREATMENT OF UNCLASSIFIED CLAIMS

2.1    Allowed Administrative Claims other than Claims of Professionals. Administrative expenses are costs or expenses of administration in connection with the Chapter 11 case, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's estate, and all fees and charges assessed against the Debtor's estate pursuant to 28 U.S.C. § 1930.  The term Administrative Claim does not include Fee Claims and quarterly fees

owed to the Office of the U.S. Trustee, which are treated separately in this Plan. These Allowed Claims shall be paid in Cash on Effective Date.

2.2     Allowed Administrative Claims of Professionals. These are Claims by any Professionals for compensation for legal and other services and reimbursement of expenses allowed or awarded under Bankruptcy Code §s 327, 328, 330(a), 331, 503(b) and/or 1103. The Allowed Administrative Claims of the Professionals shall be paid in full, in Cash, upon the later of (i) allowance by the Court pursuant to 11 U.S.C. § 330 or (ii) the Effective Date.

2.3     United States Trustee's Fees. These are claims for United States Trustee statutory fees arising under 28 U.S.C. § 1930 and 31 U.S.C. §3717. The Debtor shall pay outstanding United States Trustee statutory fees in full, in Cash, on the Effective Date, to the extent that there is any outstanding balance due at such time. Thereafter, such fees shall be paid in full, in Cash, in such amount as incurred in the ordinary course of business by the Debtor. The Debtor shall be responsible for payment of United States Trustee quarterly fees through the entry of a final decree closing the Chapter 11 case.

2.4     Allowed Priority Tax Claims. The Debtor shall pay all Allowed Priority Tax claims in full, in Cash, on the Effective Date.

**ARTICLE III**
**DESIGNATION OF CLAIMS AND INTERESTS**

3.1     Classification of Claims. All Claims against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, and all Interests arising from the ownership of the Debtor, whether resulting in an Allowed Claim or an Allowed Interest or not,

shall be bound by the provisions of the Plan, except those described in Article II of this Plan, are classified in section 3.2 hereof.

3.2    <u>Classes</u>.    For purposes of the Plan, those persons holding Claims against, or Interests in, the Debtor are grouped in accordance with section 1122 of the Bankruptcy Code.

3.2.1    <u>Class 1 Allowed Non-Tax Priority Claims</u>: Class 1 consists of Allowed Priority Claims, excluding Allowed Priority Tax Claims, entitled to priority pursuant to any subsections of Bankruptcy Code section 507(a)(3) through (a)(7).

3.2.2    <u>Class 2 Allowed Convenience Class Claims</u>: Class 2 consists of all Allowed Unsecured Claims which are $150,000 or less.

3.2.3    <u>Class 3: Allowed Unsecured Claims</u>: Class 3 consists of the holders of all Allowed, non-priority Unsecured Claims against the Debtor which are over $150,000.

3.2.4    <u>Class 4: Interests:</u> Class 4 consists of all Interests in the Debtor.


**ARTICLE IV**
**<u>TREATMENT OF CLASSES UNDER THE PLAN</u>**

4.1    <u>Class 1</u>: Holders of Class 1 Non-Tax Priority Claims shall receive payment in full of their Allowed Class 1 Claims on the Effective Date unless the underlying documents provide that payment is not yet due. In such case the payment will be made in the ordinary course under the underlying agreements. Class 1 Claims are unimpaired under the Plan and are deemed to accept the Plan.

4.2    <u>Class 2:</u> Holders of Class 2 Allowed Convenience Claims shall receive payment in full of their Allowed Class 2 Claims on the Effective Date. Class 2 Claims are unimpaired under the Plan and are deemed to accept the Plan.

4.3     Class 3:  Holders of Class 3 Allowed General Unsecured Claims shall be paid in full, from the Plan Distribution Fund, over thirty-six (36) months following the Effective Date. Payments to holders of Allowed Class 3 Claims shall commence on the Effective Date and continue for twelve (12) quarterly payments thereafter. The Debtor does not anticipate the quarterly payments being equal as the Plan Distribution Fund balance is likely to fluctuate depending on rents received, Operating Reserve requirements and the sale of Remaining Units. Nothing contained herein shall prohibit the Debtor from accelerating the payments due to the holders of Allowed Class 3 Claims, which in turn would accelerate the payments due in connection with the Fareri Contribution. Class 3 Claims are impaired under the Plan and are permitted to vote to accept or reject the Plan.

4.4     Class 4: Holders of Class 4 Interests shall retain their interests in the Debtor and all rights associated therewith.  Holders of Class 4 Interests are not expected to receive any monetary distributions under the Plan. Class 4 Interests are unimpaired under the Plan and are deemed to accept the Plan.

**ARTICLE V**
**MEANS FOR EXECUTION**

5.1     Plan Funding. The Plan shall be funded with the Plan Distribution Fund, which shall be held and ultimately distributed by the Disbursing Agent in accordance with the terms of this Plan. The Plan Distribution Fund shall be funded as follows:

5.1.1   *Net Sale Proceeds:* The Net Sale Proceeds from the Remaining Units shall first be used to fund any shortfall in the Operating Reserve, which shall be a declining amount

based upon the continuing sale of the Remaining Units. All remaining net proceeds shall be deposited with the Disbursing Agent for distribution pursuant to this Plan.

5.1.2 *Debtor's Cash On Hand:* The Debtor shall contribute all Cash on hand (inclusive of rental income), in excess of the Operating Reserve, to the Plan Distribution Fund.

5.1.3 *Fareri Contribution:* The Fareri Contribution shall be paid to the Disbursing Agent, in thirteen (13) equal quarterly installments of $565,009.47 (subject to adjustment as set forth in Section 5.1.4 below), commencing on the Effective Date.

5.1.4 *Fareri Personal Guaranty:* John Fareri agrees to personally and unconditionally guaranty full and timely payment of all of the payments due under this Plan. For the avoidance of doubt, such guaranty shall not be limited to the Fareri Contribution. In the event that the Deficiency Estimate is less than the amount necessary to fund this Plan in full, Mr. Fareri shall be required to increase his payments under section 5.1.3 above in order to fund the shortfall and ensure that the Debtor meets its payment obligations hereunder on time and in full. In the event that the Deficiency Estimate is more than the amount necessary to fund this Plan in full, then upon payment of all Allowed Unclassified and Classified Claims in full, the Fareri Contribution obligations shall cease and all remaining proceeds of the Remaining Units shall be turned to John Fareri on account of such overpayment. On or prior to Confirmation, the Debtor will provide to the Bankruptcy Court and to the holders of Class 3 Claims, (1) a written certification from a public accounting firm who will confirm that the Guarantor has unencumbered liquid assets in excess of $8 million, and (2) a Declaration of John Fareri committing to maintain not less than $8 million in liquid unencumbered assets during the pendency of the Plan.

13

5.2     Sale of Remaining Units: The Debtor shall continue to market the Remaining Units for sale in the ordinary course of its business. Upon acceptance of an offer of purchase, which the Debtor, in its reasonable business judgment, believes to be the highest and best offer, the Debtor shall be authorized to enter into an appropriate Contract of Sale and to close on same. The respective purchaser of each of the Remaining Units shall acquire upon the sale, and the Debtor shall convey, all of the right, title and interest that Debtor possesses as of the closing in and to each of the Remaining Units, free and clear of all pre-closing liens, Claims, encumbrances, other interests, debts, causes of action, obligations, liabilities, and charges of any kind, nature or description whatsoever, whether fixed or contingent, legal or equitable, perfected or unperfected pursuant to sections 363(b), (f), (k) and (m) and 1123(b)(4) and 1129 of the Bankruptcy Code (collectively, the "Liens and Claims"). All persons and entities asserting Liens and Claims of any kind or nature whatsoever against or in Debtor or the Remaining Units, arising under or out of, in connection with, or in any way relating to, Debtor or its property, shall be forever barred, estopped, and permanently enjoined from asserting such Liens and Claims against the purchaser, its successors or assigns or its property.

5.3     Tax Exemption. Given that this Plan expressly contemplates the sale of the Remaining Units on or after the Effective Date, the sale thereof shall not be taxed under any law imposing a stamp or similar tax as provided for in section 1146(a) of the Bankruptcy Code.

## ARTICLE VI
## <u>EXECUTORY CONTRACTS</u>

6.1    As of the Effective Date, the Debtor shall assume all leases and written contracts which are executory, in whole or in part, to which the Debtor is a party and which have not been assumed or rejected prior to the Confirmation Date. **Any person or entity who believes that there is a cure payment due and owing in connection with such assumption must file a Claim with the Clerk of the Court and serve such claim upon counsel for the Debtor no later than twenty-five (25) days after service of the Disclosure Statement. If such Claim is not filed within such specified time, it shall forever be barred from assertion against the Debtor and its estate. In the event that the Debtor disagrees with the Claim asserted, a written objection shall be filed by the Debtor prior to the Confirmation Date, seeking a determination by the Bankruptcy Court.**

## ARTICLE VII
## <u>RESOLUTION OF DISPUTED CLAIMS & RESERVES</u>

7.1    <u>Objections</u>.  An objection to either the allowance of a Claim or an amendment to the Debtor's Schedules shall be in writing and filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date, or within such other time period as may be fixed by the Bankruptcy Court. Except as otherwise set forth in this Plan, any Claim not filed with the Bankruptcy Court by November 24, 2021, unless specifically scheduled by the Debtor as non-disputed, non-contingent and liquidated is hereby deemed invalid for all purposes

7.2    Amendment of Claims.    A Claim may not be amended to increase the amount after the Confirmation Date, except as agreed upon by the Debtor and the holder of such Claim, or as approved by the Bankruptcy Court.

7.3    Distributions to Holders of Subsequently Allowed Claims.    Unless another date is agreed on by the Debtor and the holder of a particular subsequently Allowed Claim, the Disbursing Agent shall, on the first Business Day to occur after entry of a Final Order resolving the dispute, distribute to such holder with respect to such subsequently Allowed Claim the amount of distribution required under the Plan at that time, in Cash.    The holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed amount of its Claim, regardless of when distribution thereon is made to or received by such holder.

7.4    Reserve for Disputed Claims.    The Disbursing Agent shall reserve, on account of each holder of a Disputed Claim, that property which would otherwise be distributable to such holder on each payment date, as if such Disputed Claim were an Allowed Claim on that date, or such other amount as the holder of such Disputed Claim and the Debtor may agree upon.    The property so reserved for the holder, to the extent such Disputed Claim is Allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such holder.

## ARTICLE VIII
## AVOIDANCE ACTIONS

8.1    The Debtor's estate has investigated all causes of action under sections 544, 547, 548, 550 and 553 of the Bankruptcy Code including the claims raised by the Court appointed Examiner, Fred Stevens, Esq., in his report, specifically including such claims against John Fareri, the Debtor's Affiliates and Insiders (collectively, the "Estate Claims"). The Fareri

Contribution and the personal guaranty of this Plan by John Fareri, shall be in consideration of and in exchange for full and final settlement and release of any Claims which the estate has, had or may have against John Fareri, the Debtor's Affiliates and the Insiders, except as to such obligations set forth in this Plan. The foregoing notwithstanding, the Fareri Contribution and personal guaranty shall in no way be deemed an admission of any liability whatsoever with respect to the Estate Claims. The foregoing release shall be effective upon payment in full of all amounts due under this Plan.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN
## AND EFFECTIVE DATE

9.1 <u>Conditions to the Occurrence of Confirmation</u>. The occurrence of the Confirmation Date shall be subject to the entry of the Confirmation Order.

9.2 <u>Conditions to the Occurrence of the Effective Date</u>. The Plan may not be effective until the entry of the Confirmation Order as a Final Order that remains in full force and effect and shall not have been stayed or reversed.

9.3 <u>Non-Occurrence of the Effective Date; Non-Waiver of Conditions</u>. In the event that the Debtor determines that the conditions to the Effective Date set forth in the immediately foregoing paragraph of this Plan cannot be satisfied, the Debtor may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

## ARTICLE X
## EFFECT OF CONFIRMATION, DISCHARGE,
## SURRENDER AND CANCELLATION OF CLAIMS

10.1    <u>Discharge and Vesting.</u> Upon entry of the Confirmation Order, the Debtor shall be discharged from all pre-Petition Date Claims as set forth in section 1141(d)(1) of the Bankruptcy Code and upon the Effective Date, pursuant to section 1141(c) of the Bankruptcy Code, except as specifically provided for in this Plan, all property of the Debtor's estate, including but not limited to the Naples Property, shall vest in the Reorganized Debtor, free and clear of all Liens and Claims. The Plan shall be binding on all parties in interest to the fullest extent possible under section 1141(a)-(c) of the Bankruptcy Code.

10.2    <u>Exculpation</u>. *Neither the Debtor nor any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the chapter 11 case or the Plan and any related agreement except for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Article XI hereof shall (a) effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in sections 10.2 or 10.3 hereof enjoin the United States or*

*any state or local authority from bringing any claim, suit, action or other proceedings against any of the Released Parties referred to herein for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, or (b) limit the liability of the Debtor's professionals to the Debtor pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.*

10.3     <u>Confirmation Injunction.</u> *Upon the Confirmation Date, but subject to the occurrence of the Effective Date, all persons who have held, hold or may hold Claims or Interests are enjoined from taking any of the following actions against or affecting the Debtor or assets of the Debtor with respect to such Claims, Interests or Administrative Claims, except as otherwise set forth in the Plan, and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:*

*(i) Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, arbitration, or other proceeding of any kind against the Reorganized Debtor or the assets of the Reorganized Debtor regarding the Claims or Interests arising out of any act or omission of the Debtor;*

*(ii) Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Reorganized*

*Debtor, the assets of the Reorganized Debtor with regard to such entities' Claim against the Debtor;*

*(iii) Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Reorganized Debtor, the property of the Reorganized Debtor, or any successor-in-interest to the Reorganized Debtor;*

*(iv) Asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Reorganized Debtor, the property of the Reorganized Debtor, or any successor-in-interest to the Reorganized Debtor; and*

*(v) Proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan.*

## ARTICLE XI
## EVENTS OF DEFAULT

11.1 <u>Events of Default</u>. The occurrence of any of the following events shall constitute an event of default under the Plan:

(a) The failure of the Debtor and/or the Guarantorto make any payment required to be made under the Plan on time or in the amount set forth in the Plan ("Payment Default") , which failureshall have remained uncured for a period of ten (10) days after the date such payment is required to be made, unless the time for such payment has been extended in accordance with the Plan;or

(a) The failure of the Debtor to comply with any of the other covenants contained in the Plan ("Non-Payment Default")(Payment Default and Non-Payment Default are

collectively, a "Default"), which failure shall remain uncured for a period of ten (10) days after the Debtor has received ten (10) days written notice of such failure .

11.2    Notice of Default. The Disbursing Agent shall be required to provide notice of any Payment Default in accordance with this Article XI, which notice shall be filed on the Court's electronic docket and served on holders of Class 3 Claims. In addition, any holder of a Claim shall have the right to provide written notice to the Debtor and the Disbursing Agent (in accordance with Section 12.5 of the Plan) of a Default and trigger the ten (10) day cure periods set forth herein.

11.3    Effect of Default. Upon an uncured Default, all amounts due under the Plan shall be accelerated and immediately due and payable by the Debtor and the Guarantor and Howard Magaliff, Esq., a chapter 7 trustee of Gateway Development Group, Inc.., the estate's largest unsecured creditor, shall be vested with the authority and standing to enforce the obligations hereunder, without the need for further order of the Court.

.

## ARTICLE XII
## GENERAL AND MISCELLANEOUS PROVISIONS

12.1    Modification of the Plan.    The Debtor reserves the right, in accordance with section 1127(a) of the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date. After the Confirmation Date, the Debtor may, upon order of the Bankruptcy Court, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile and inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

12.2     Payment Dates. If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, then the making of such payment or performance of such act may be completed on the next succeeding Business Day and shall be deemed to have been completed timely.

12.3     Distributions and Unclaimed Payments. Distributions to holders of Allowed Claims shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or if no proof of claim is filed, on the Schedules, or to such other address as may be designated by such Creditor in writing to the Debtor. A payment is to be deemed unclaimed if the payment on the distribution is not negotiated by the particular claimholder within 120 days of it being sent by the Debtor in which case the distribution will be treated as a disallowed Claim and returned to the Plan Distribution Fund.

12.4     Disbursing Agent. The Disbursing Agent shall be authorized and directed to make and effectuate all distributions under the Plan. The Disbursing Agent shall be permitted to maintain the Plan Distribution Funds in an attorney escrow account and no bond shall be required.  The Disbursing Agent shall not be liable to the Debtor, any creditor or any other party in interest, for any error of judgment or for any mistake of law or fact or any act done, caused to be done, or omitted to be done, by the Disbursing Agent or any of its agents. The Disbursing Agent shall be liable only for acts of willful misconduct, gross negligence, or breach of fiduciary duty by itself or such agents.

12.5     Notices. Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid; or by overnight mail or hand delivery, addressed as follows:

If to the Debtor:          GATEWAY KENSINGTON LLC
One Greenwich Office Park South, Suite 350
Greenwich, Connecticut 06831
Attn: John Fareri, Manager

with a copy to Debtor's counsel:

KIRBY AISNER & CURLEY LLP
700 Post Road, Suite 237
Scarsdale, New York 10583
Attn: Erica R. Aisner, Esq.

The above notice parties may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt. Any payment required under the Plan shall be deemed to have been paid on the date when such payment is paid by the Disbursing Agent.

12.6     **Enforceability.** Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

12.7     **Applicable Law.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

12.8     **Successors and Assigns.** The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

12.9     **Reservation of Rights.** Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein

may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 case.

12.10 <u>U.S. Trustee Fees and Monthly Operating Reports</u>. After the Confirmation Date, the Debtor will pay or cause the payment of fees, and any applicable interest, incurred pursuant to 28 U.S.C. § 1930(a)(6) and 31 U.S.C. § 3717 and will file or cause the filing with the Bankruptcy Court and serve or cause service on the U.S. Trustee of monthly operating reports while the Chapter 11 case remains open, unless the Bankruptcy Court orders otherwise.

12.11 <u>Post Confirmation Reports</u>. The Debtor shall be responsible for filing post-confirmation reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. § 1930 until the earlier of (a) conversion or dismissal of the Chapter 11 case or (b) entry of a final decree closing the Chapter 11 case.

12.12 <u>Corporate Action.</u> Upon the entry of the Confirmation Order, all matters provided under the Plan involving the corporate structure of the Debtor shall be deemed authorized and approved without any requirement of further action by the Debtor, the Debtors' shareholders and/or members, or the Debtors' boards of directors, managers, and/or managing members.

12.13 <u>Payment of Professionals for Post-Confirmation Date Services</u>. The reasonable compensation and out-of-pocket expenses incurred post-Confirmation Date by the Debtor's Professionals, inclusive of their services provided as the Disbursing Agent, and shall be paid by the Reorganized Debtor within twenty (20) days after presentation of invoices; provided, however, that if the Debtor and any Professionals cannot agree on the amount of post-Confirmation Date fees and costs to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court.

**ARTICLE XIII**
**RETENTION OF JURISDICTION**

13.1    The Bankruptcy Court shall retain jurisdiction of the Chapter 11 case:

(a)    To determine all controversies relating to or concerning the allowance of Claims upon objection to such Claims by the Debtor;

(b)    To determine requests for payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

(c)    To determine any and all applications pursuant to section 365 of the Bankruptcy Code for the rejection, or assumption and/or assignment, as the case may be, of executory contracts and unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to determine and, if necessary, to liquidate, any and all Claims arising therefrom;

(d)    To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334;

(e)    To determine all Disputed Claims and amendments to the Debtor's Schedules;

(f)    To adjudicate controversies or interpretations pursuant to any order or stipulation entered by the Bankruptcy Court prior to the Confirmation Date;

(g)    To modify this Plan pursuant to section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

(h)     To make such orders as are necessary or appropriate to carry out the provisions of this Plan;

(i)     To resolve controversies and disputes regarding the interpretation or enforcement of the terms of this Plan;

(j)     To determine any issues concerning the sale of the Property and to issue and enforce injunctions or take other actions necessary to implement the sale of the Property, this Plan, and the transfers of the Debtor's assets to the prospective buyer(s) free and clear of all liens, claims, encumbrances and other interests; and

(k)     To enter a final decree closing the Chapter 11 case.


Dated: Scarsdale, New York
       April 20, 2022

**GATEWAY KENSINGTON LLC**

By:   */s/ John Fareri*
        John Fareri, Manager

**KIRBY AISNER & CURLEY LLP**
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500

By:   */s/ Erica R. Aisner*
        Erica R. Aisner, Esq.


**AGREED AND CONSENTED**, as to section 5.1.3 of this Plan, in which the undersigned unconditionally **PERSONALLY GUARANTEES** all of the payment obligations under this Plan.


  */s/ John Fareri*
John Fareri, individually